to inquire what is that IBM stock worth? I think under your hypothetical it would be reasonable for the trustee to assume that the stock is worth what the bankruptcy court and what the bankruptcy judge had said it's worth by admitting the schedules into evidence. At that point I think an appraisal would be meaningless because we have an evidentiary admission of the value of the asset. Breyer. I just want to understand procedurally how this all happened. So this was the trustee's motion to sell? Correct. And was it a motion to sell the possessory estate to Mr. Garmong or just to put it up for sale? It was a motion to sell it to Mr. Garmong. For $100? For $2,500. $2,500. And the estate. Okay. So she filed – did he file the motion with her? He filed a joinder. After she filed the motion, he filed a joinder. Then the bankruptcy court denied it. Correct. In the meantime, Mrs. Garmong intervened. She was granted intervener status at the district court level. Oh, at the district court level. Yes. And we objected to that. So only Mr. Garmong appealed to the district court. Is that right? Correct. The trustee did not. That's correct. The trustee elected not to participate in the appeal. Okay. And the appeal from the district court to here is just Mr. Garmong again? Again, Mr. Garmong, yes. It just strikes me that he's sort of like a, you know, a potential purchaser who really is just upset that he didn't get to buy. Well, he has, I think, a greater interest than just a disappointed buyer. He owns the remainder interest. So he has a financial and a property interest that's affected by the denial of the sale. All right. I'm going to save the balance of your time. I would like to reserve for later. Okay. That's fine. Thank you. May it please the Court. My name is Mary Beth Gardner, and I am co-counsel for Mrs. Linda Garmong, Intervenor Appellee. Now, our opposing counsel is a very articulate and eloquent individual, but essentially there are two basic principles that resolve this matter very easily. The first, the legal principle. The trustee stands in the shoes of the debtor with respect to the property brought into the estate. What the trustee, what Linda Garmong has, the trustee has. The second principle is Linda Garmong has absolutely no right whatsoever to sell this property, not to transfer it, not to do anything with it. Even if she were offered a half a million dollars by somebody, she would not have that authority. The divorce decree, the settlement agreement and divorce decree establishes in Mr. Garmong a right of redemption. He can get her out of there for $250,000. That's not her right to sell. That's not the trustee's right to sell. That is his right to get her out of there. Now, there are other – in the briefings, there's much ado made by Mr. Garmong by the fact that there is – are things short of a $250,000 payment that can get Mrs. Garmong out. There are. She can die. She can remarry. She can move in a boyfriend. She can decide she wants to live someplace else, and he has to move her. She moves someplace else. He has to sell that property and get her a new place. This is denominated a limited life estate. It is a right to possess. It is a marital settlement. It is something that did not – whatever it conveyed, whatever her filing, the Chapter 7 bankruptcy did to convey to the trustee, it did not convey to the trustee something that could be transferred and sold for money. The trustee did not investigate this. Her testimony, I believe, was something to the effect of, I got a letter from the lawyer offering to buy what they call the limited life estate, by the way, non-transferable limited life estate. And so I felt obligated to notice it up. It was that perfunctory. It was Mr. Garmong's impetus that brought us to where we are. It is Mr. Garmong's impetus that brings us to here today. We agree. He is just a disappointed bidder, just a disappointed buyer. Whatever interest he has in that property, it all goes back to the fact that it's part of a marital settlement. He's got recourse. There was tips to lift the stay of the bankruptcy proceeding so these people could go back to State court. And any problems he had with how she was dealing with the property, if there was waste, that sort of thing, all of it's provided for in the marital dissolution. This was just an attempt to get it for a penny on the dollar that he thought it's an opportunistic attempt by Mr. Garmong, with all due respect to the opposing counsel, very opportunistic on his part. I am going to let my counsel, co-counsel, Mr. Steve Young, take over from here. Thank you, Your Honors. Thank you very much. May it please the Court, Steven Young as co-counsel on behalf of Ms. Linda Garmong. And we know that the bankruptcy court characterized at the point of sale, he denied the motion on the basis that the trustee had nothing to sell in his opinion. The district court took a little bit different tact and said that the trustee stood in the shoes of the debtor and had nothing to sell. So the bankruptcy court comments in the record that he has 25 years' experience as a real estate attorney prior to his assuming the bench, and he said that through the record we'll find that he talks about the limited life estate as actually a license. It's more like a license. It has no equity. In fact, the bankruptcy court denied our motion for homestead exemption based on the fact that there was no equity in the property. So let's see. In the record he states that I don't think that the trustee wants to live there, meaning that what he felt was that the trustee had a right to live in the property and that was the only right she had. So the bankruptcy court made the case that the trustee was going to live there, which is the only right he had, because he had no equity. And that's the only right he had. He didn't have any right to sell the property. Anything else? Your Honor, did Your Honors have any questions? Thank you. I have one question. Counsel, as Judge Brewer, I do have one question. I understand the position that the property is not in the bankruptcy estate, or that if it is, it can't be sold. But assuming that both of those are wrong, and assuming that the limited life estate was part of the bankruptcy estate and the trustee could sell it for whatever he could get for it, it does have a value to Mr. Gorman, because if he gets rid of that, he could probably sell his property for more. So would the trustee, does the trustee have a fiduciary duty in assessing value of the asset to try to figure out what its value is to Mr. Gorman before selling it for $2,500? She does, Your Honor. And there is a – that lays the basis for a separate reason why this honorable court can affirm the denial of the motion to sell, because, as Your Honors have discussed, Ms. Kopennewtson simply did not do anything in this case. The – our opinion, our position is that the motion to sell was engineered totally by Mr. Hyme and Mr. Garmong. We believe that most of everything was drafted. Possibly Ms. Kopennewtson did draft her own motion. I'm not saying that I don't think there's any basis in the record that she didn't draft her own motion. So we'll assume that she did draft her own motion. And because she didn't exercise business judgment, that would be a separate basis to affirm the denial. Thank you. Thank you. Mr. Hyme, you have a few minutes left. Your Honor. Counsel, I would appreciate if you would address the same question I just asked your opposing counsel. That is, assuming that the limited life estate is property of the bankruptcy estate that the trustee could sell. Assuming the trustee could sell, wouldn't the trustee have a duty – or would the trustee have a fiduciary duty to try to figure out what is its market value to Garmong? Because, you know, maybe it has no value to someone else, but he's the guy making the offer. Well, two parts. Let me provide two quick answers to your question. Mr. Garmong is the only person, the appellant is the only person to whom this interest can be sold. It can be sold, and he's the only one in the world under the decree to whom it can be sold. It's nontransferable as to anybody else. Okay, so let me get to my question. If accepting that as an assumption, wouldn't the trustee trying to maximize the value of the estate have some duty to say, well, what's it worth to Garmong? In other words, if Garmong tried to sell his remaining interest to some other purchaser, how much more could he get if that life estate was out of it than if he had to sell it subject to the idea that someone else would live there for life? Well, I think she does have a fiduciary duty to the creditors, to all the creditors. And here she did discharge that fiduciary duty by accepting what is, in essence, 25 times the value that the bank had established. Okay, but I thought she said that, and I don't mean to argue about this. I'm just trying to get your view. I thought that she said she hadn't really investigated it. So isn't, I mean, is there a fiduciary duty for her to look to real economic value to Garmong as opposed to what the schedule said? Well, that would be, I think, an improper focus on a single creditor. She needs to look and see what she can do to benefit the entire creditor body, primarily the unsecured creditors. And as I indicated, I believe she discharged that duty by not only looking to get what she could for what an interest at the bankruptcy court itself described as worthless and getting $2,500 for that plus the assumption of $20,000 in debt relief. But she did, again, and I will correct myself, it's at record 217 where the letter, the offer that details the nature of the interest and the information that was given to the trustee with respect to the interest being sold and purchased. So I think that was just a quick response in the record when she said, I don't know what I'm selling because attached to the sale motion, there's a detailed letter that outlines what she was selling. So she did, in fact, know what she was selling. Okay. Thank you. I appreciate that. If there are no other questions, I have no other. I don't have any. Do it away. Thank you. Okay. Thank you. Thank you, counsel. We appreciate your arguments on the matter submitted. Have a safe trip back to Reno. Where is it? Reno. Reno.
judges: Burns, Gould, Paez